**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| ALL AMERICAN PROPERTIES, INC., | : | Case No. 10-00273-MDF |
| Debtor. | : | |

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY TO ALLOW THE ENTRY AND ENFORCEMENT OF A COURT ORDER GRANTING INJUNCTIVE RELIEF AGAINST THE DEBTOR**

Petro Franchise Systems LLC ("Petro Franchise") and TA Operating LLC (collectively, "Petro"), by and through their undersigned counsel, hereby move pursuant to Sections 105(a), 362(d) and 365 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended (the "Bankruptcy Code"), Rule 4001(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-1 of the Local Rules of the United States Bankruptcy Court for the Middle District of Pennsylvania (the "Local Rules"), for relief from the automatic stay to allow the entry and enforcement of a court order entered in the United States District Court for the Western District of Texas granting an injunction against All American Properties, Inc. f/k/a All American Plazas, Inc. (the "Debtor"). In support of the Motion, Petro respectfully states as follows:

## BACKGROUND

### A. Petro's Franchise Agreement with the Debtor

1. On or about February 1998, Petro Stopping Centers, L.P. ("Petro Stopping") and the Debtor entered into a franchise agreement granting the Debtor a franchise to operate a "Petro"-branded travel center at 167 Post House Road, Breezewood, PA 15533 (the "Breezewood Travel Center").

DMEAST #12157296 v4

2. As a result of a change in the Debtor's ownership, on or about October 23, 2003, Petro Stopping and the Debtor entered into a new franchise agreement and an addendum thereto (the "Petro Franchise Agreement"), that authorized the Debtor to operate the Breezewood Travel Center as a Petro-branded travel center for 10 years plus renewal periods. A true and correct copy of the Petro Franchise Agreement is attached hereto as Exhibit A.[1]

3. The Petro Franchise Agreement contains a provision (the "Non-Compete Covenant") barring the Debtor from "owning or operating" the Breezewood Travel Center for three years following termination of the Petro Franchise Agreement. *See* Section 1.7 of the Petro Franchise Agreement.[2]

4. Section 1.7 also states that "[t]he parties recognize and agree that if Franchisee breaches this section . . . money damages are not an adequate remedy to Petro for the breach, [and] . . . Petro shall be entitled to seek an injunction restraining Franchisee from any breach, without showing or proving actual damage sustained by Petro."

5. Pursuant to the above agreements, the Debtor operated the Breezewood Travel Center as a Petro-branded travel center from February 1998 until April 2009.

**B. The Debtor's Default Under The Franchise Agreements**

6. Under the Petro Franchise Agreement, the Debtor was required to pay monthly royalty, advertising and other fees. Unfortunately, the Debtor repeatedly defaulted on

---

1 Effective on or about August 31, 2008, Petro Franchise was assigned all of the rights and obligations of Petro Stopping in the Petro Franchise Agreement.

2 Pursuant to § 1.7(a)(2) of the Petro Franchise Agreement, the Debtor is entitled to own and operate non-Petro branded travel centers that it builds from the ground up and existing non-Petro travel centers that it acquires.

these payment obligations. As a result, Petro sent a notice of default to the Debtor regarding various payment defaults on January 28, 2008, and the Petro Franchise Agreement was terminated for the first time effective March 1, 2008.

7. As a result of a settlement, the Petro Franchise Agreement was reinstated after the Debtor paid the past-due franchise fees and prepaid monies for franchise fees which were applied against March and April 2008 payments.

8. Notwithstanding the settlement, the Debtor failed to pay Petro any further franchise fees. As a result, Petro sent the Debtor a series of default notices and the Petro Franchise Agreement was terminated a second time on August 29, 2008.

9. On September 2, 2008, Petro wrote to the Debtor to confirm that the Petro Franchise Agreement had been terminated and asked the Debtor to confirm that it had taken steps to implement its post-termination obligations, including de-identifying the Breezewood Travel Center as a Petro facility.

10. Not only did the Debtor fail to respond to this letter, but it continued to operate the Breezewood Travel Center as a Petro-branded travel center without permission. Thus, it refused to take down the Petro signage and continued to hold itself out to the public as a Petro franchisee.

## C. The Texas Litigation

11. On October 7, 2008, Petro filed a complaint in the United States District Court for the Western District of Texas (the "Federal District Court in Texas") (Case No. 3:08-cv-00387-KC) (the "Texas Action"), seeking, among other things, an injunction requiring the Debtor to cease and desist from utilizing the Petro trademarks and brands. Petro applied for an injunction in October 2008, which ultimately was granted by the Federal District Court in Texas on March 23, 2009.

12. In April 2009, approximately two weeks after entry of the injunction, the Debtor took down the Petro signage at the Breezewood Travel Center. However, pursuant to an agreement with Pilot Travel Centers LLC ("Pilot") and without providing any advance notification to Petro, the Debtor immediately erected signage rebranding the facility as a Pilot Travel Center, and thereby caused the facility to be operated as a Pilot Travel Center in direct violation of the Non-Compete Covenant in the Petro Franchise Agreement.

13. On April 27, 2009, Petro wrote to Pilot and the Debtor, reminding them of the Debtor's obligation under the Non-Compete Covenant and notifying them that the Debtor's operation of the Breezewood Travel Center as a Pilot Travel Center violates that obligation.

14. On October 13, 2009, Petro filed an amended complaint in the Texas Action seeking, among other claims for relief, an injunction barring the Debtor from violating the Non-Compete Covenant by operating the Breezewood Travel Center as a Pilot Travel Center.

15. On December 4, 2009, the Federal District Court in Texas held a hearing on Petro's motion to compel the Debtor to provide discovery. Following the hearing, the court entered an order granting Petro's motion and compelling the Debtor to provide discovery (the "Discovery Order"). The Discovery Order stated that "[f]ailure to comply with this order may result in the imposition of sanctions."

16. The Debtor failed to comply with the Discovery Order, and on January 7, 2010, the Federal District Court in Texas held a hearing to show cause as to why sanctions should not be issued against the Debtor. The Debtor appeared at the hearing but failed to justify its continuing noncompliance. Following the hearing, the court issued an Order imposing various sanctions on the Debtor and requiring it to comply with the court's orders by January 14, 2010.

17. The Debtor failed to comply with these orders, and, on January 14, 2010, at 2:00 PM MST (4:00 PM EST), the Federal District Court in Texas held a second hearing to show cause regarding the Debtor's continued disregard of its orders. The Debtor yet again failed to show cause and justification for its non-compliance, and the court issued an Order (the "Injunction Order") that, among other terms, enjoins the Debtor from violating the Non-Compete Covenant for a period of three years, and specifically enjoins the Debtor from "owning or operating . . . the Breezewood travel center, and from owning or operating . . . any fuel service operations at the former Breezewood Petro location . . . ." A true and correct copy of the Injunction Order is attached hereto as Exhibit B.

18. Subsequent to this hearing but prior to the docketing of the Injunction Order, on January 14, 2010 at 4:41 PM EST, the Debtor filed for relief under Chapter 11 of the Bankruptcy Code in this Court, and filed a Suggestion of Bankruptcy in the Federal District Court in Texas.

19. As of the date of this Motion, the Debtor continues to violate the Non-Compete Covenant by operating the Breezewood Travel Center as a Pilot Travel Center.

20. Petro seeks relief from the automatic stay (a) annulling such stay to validate the entry of the Injunction Order, and (b) terminating such stay to permit enforcement of

the Injunction Order against the Debtor to the extent that the Debtor continues to violate the terms thereof.

**JURISDICTION AND VENUE**

21. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**BASIS FOR RELIEF**

22. The statutory predicates for the relief sought herein are Sections 105(a), 362(d), and 365 of the Bankruptcy Code, Rule 4001 of the Bankruptcy Rules, and Rule 4001-1 of the Local Rules.

23. Section 362(d)(1) of the Bankruptcy Code provides, in relevant part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

24. "Cause" is an intentionally flexible concept requiring the Court to examine the totality of the circumstances to determine whether sufficient cause exists to lift the stay. *E.g.*, *In re Brown*, 311 B.R. 409, 412-13 (E.D. Pa. 2004); *In re Merchant*, 256 B.R. 572, 576 (Bankr. W.D. Pa. 2000); *In re SCO Group, Inc.*, 2007 WL 4224407 (Bankr. D. Del. Nov. 27, 2007).

25. Debtor is in clear breach of the Non-Compete Covenant and, but for an 11th hour bankruptcy filing, would also be in clear violation of the Injunction Order.

26. The Debtor had a full and fair opportunity to litigate any issues regarding the Non-Compete Covenant before the Federal District Court in Texas, and chose instead to

repeatedly ignore discovery orders entered by that court, and in a final act of willful disregard of the court, filed bankruptcy before the court could enter the Injunction Order in response to the Debtor's defiance.

27. The Debtor's ongoing breach of the Non-Compete Covenant causes substantial and continuing harm to Petro in the following respects: (a) it prevents Petro from finding another franchisee to operate in Breezewood, which is a highly desirable location because it lies at the interchange of two major interstate highways (I-70 and I-76); (b) it creates a big gap in Petro's East-West network of travel centers, thereby diverting untold numbers of truck fleet customers and independent truckers from other Petro travel centers and causing these customers to patronize Petro's major competitors; and (c) it threatens to undermine Petro's continued relationship with other franchisees who, upon learning of the Debtor's conduct, will be more likely to flout their own obligations.

28. Accordingly, cause exists to grant to Petro relief from the automatic stay (a) annulling such stay to validate the entry of the Injunction Order, *see In re Siciliano*, 13 F.3d 748, 751 (3d Cir. 1994); and (b) terminating such stay to permit enforcement of the Injunction Order against the Debtor to the extent that the Debtor continues to violate the terms thereof, *see In re Hohol*, 141 B.R. 293 (M.D. Pa. 1992).

29. In *In re Hohol*, Judge Nealon of the Middle District of Pennsylvania affirmed a bankruptcy court order lifting the stay in circumstances remarkably similar to those presented here, *i.e.*, to allow the non-bankrupt party to enforce a pre-petition preliminary injunction that enjoined the debtor from violating a non-compete covenant, where the debtor filed for bankruptcy soon after being denied a stay of the preliminary injunction pending an appeal. *Id.* at 293-95. The *Hohol* court emphasized that the preliminary injunction was a valid

order and the debtor had an "opportunity to fully present his case before the Court of Common Pleas . . . ." *Id.* at 298. Moreover, the *Hohol* court noted that the debtor had not established that lifting the stay would cause prejudice because the non-bankrupt party was not seeking damages for the breach of the non-compete, and concluded that any harm that might result from the injunction would be "of no moment" given the debtor's violation of the non-compete. *Id.* at 298-99.

30. The reasoning of *Hohol* applies with equal force here. The Debtor in this case also had the "opportunity to fully present [its] case" in the Texas Action, and instead chose to ignore court orders until the Federal District Court in Texas had had enough. The Injunction Order is no less dispositive under such circumstances.[3] Moreover, the only "prejudice" the Debtor will suffer is the inability to continue to breach the Non-Compete Covenant and the Injunction Order with undeserved impunity. Contrasted against this "prejudice" is the very real harm Petro has suffered and continues to suffer because of the Debtor's willful disregard of its contractual obligations and the Orders of the Federal District Court in Texas.

---

[3] Under both Third Circuit and Fifth Circuit law, orders dismissing claims with prejudice based on violations of court orders, including discovery orders, have res judicata effect. *E.g.*, *Wade v. Pittsburgh*, 765 F.2d 405, 408-09 (3d Cir. 1985) ("a judgment based on dismissal for failing to follow court procedures, or one entered by default, while not actually based on the merits, nevertheless has preclusive effect"); *In re Reed*, 861 F.2d 1381, 1382 (5th Cir. 1988) (applying res judicata and holding that dismissal of plaintiff's first case for failure to comply with a discovery order was a final judgment on the merits).

## RELIEF REQUESTED

WHEREFORE, Petro respectfully requests that the Court grant Petro relief from the automatic stay (a) annulling such stay to validate the entry of the Injunction Order, and (b) terminating such stay to permit enforcement of the Injunction Order against the Debtor to the extent that the Debtor continues to violate the terms thereof, and grant such other relief as is appropriate.

Respectfully submitted,

/s/ Martin C. Bryce, Jr.

Martin C. Bryce, Jr., Esquire (No. 59409)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone: (215) 864-8238
Facsimile: (215) 864-9511
E-mail: bryce@ballardspahr.com

and

Vincent J. Marriott, III, Esquire (No. 41457)
Edward D. Rogers, Esquire (No. 69337)
Joshua E. Zugerman, Esquire (No. 205774)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone: (215) 665-8500
Facsimile: (215) 864-8999
E-mail: marriott@ballardspahr.com
rogerse@ballardspahr.com
zugermanj@ballardspahr.com

Counsel for Petro Franchise Systems LLC and TA Operating LLC

Dated: February 1, 2010