IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:                                       :
                                             :   CASE NO. 1-10-00273
ALL AMERICAN PROPERTIES, INC.                :
                                             :   CHAPTER 11
          Debtor                             :

**DEBTOR'S MOTION FOR APPROVAL FOR DEBTOR TO UTILIZE
CASH COLLATERAL THOUGH MARCH 31, 2010 AND PAY PRE-PETITION
PAYROLL**

The Motion of All American Properties, Inc. ("Debtor"), by and through its attorneys, Cunningham and Chernicoff, P.C., for Approval for Debtor to Utilize Cash Collateral and Pay Pre-Petition Payroll is as follows:

### BACKGROUND

1. On January 14, 2010 (the "Petition Date"), the Debtor filed a Voluntary Petition for Relief under Chapter 11 of the United States Bankruptcy Code (the "Code"). As a result thereof, the Debtor has been appointed as a debtor-in-possession.

2. The Debtor is a Pennsylvania business corporation which owns and operates various parcels of real property utilized as truck plaza businesses (the "Truck Plaza Business") in several locations throughout Pennsylvania.

3. The Debtor is the 100% shareholder of, among other entities, the following entities:

   a. Clarks Ferry Properties, Inc. ("Clarks Ferry") which is the owner of a truck plaza located at 24 Bienvenu Road, Duncannon,

1

Pennsylvania (the "Clarks Ferry Property");

 b. Frystown All American Properties, Inc. ("Frystown") which owns real property located at and known as the Southwest Quadrant of Route 645 & Interstate 78, Bethel, Pennsylvania ("Frystown All American Property");

 c. Frystown Gables Properties, Inc. ("Frystown Gables") which owns real property located at the Southeast Quadrant of Route 645 & Interstate 78, Myerstown, Pennsylvania ("Frystown Gables Property");

 d. Carlyle Gables Properties, Inc. ("Carlyle") which owns property located at 1240 Harrisburg Pike, Carlisle, Pennsylvania ("Carlisle Property");

 e. Harrisburg Gables Properties, Inc. ("Harrisburg") which owns real property located at 7800 Linglestown Road, Harrisburg, Pennsylvania ("Harrisburg Property");

4. The Debtor previously operated the Truck Plaza Business. During 2007 All American Plazas, Inc. ("Plazas"), took over operation of the Truck Plaza Business. Plazas previously had leases with respect to the Clarks Ferry Property, the Frystown All American Property, Frystown Gables Property, the Carlisle Property and the Harrisburg Property. Plazas also previously managed a property located at 167 Post House Road, Breezewood, Pennsylvania (the "Breezewood Property"). The Debtor leases the real estate and operates the Breezewood Property. All of the above real

2

Case 1:10-bk-00273-MDF    Doc 35    Filed 02/18/10    Entered 02/18/10 16:50:30    Desc
Main Document    Page 2 of 15

property set forth above in this paragraph and Paragraph 3 above are hereinafter the "Properties".

5. Plazas filed a Petition under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York to Case No. 09-11809 (the "Plazas Chapter 11").

6. Clarks Ferry and Frystown also filed separate Chapter 11 Petitions in the United States Bankruptcy Court for the Southern District of New York to Case No. 09-10971 and Case No. 09-10972 (collectively the "Subsidiary Chapter 11's").

7. Following a Motion by Clarks Ferry and Frystown requesting a Voluntary Dismissal of the respective Chapter 11 Cases, the United States Bankruptcy Court for the Southern District of New York entered an Order dismissing each such Chapter 11 cases (the "Dismissal Order"). A true and correct copy of such Dismissal Order is attached hereto as **"Exhibit A"** and made a part hereof.

8. On or About November 13, 2009, Plazas filed a Motion in the Plazas Chapter 11 case (the "Lease Rejection Motion") requesting an entry of an Order authorizing the rejection of the interests of the Debtor of Plazas in the various leases of the Properties, as well as abandonment of certain personal property, including but not limited to various parts, inventory, fuel inventory and the like.

9. As a result of the filing of the Lease Rejection Motion, the United States Bankruptcy Court for the Southern District of New York entered an Order dated December 4, 2009 authorizing the rejection of the Leases and the abandonment of certain personal property to the Debtor. A true and correct copy of such Order (the

"Lease Order") is attached hereto as **"Exhibit B"** and made a part hereof.

10. At the time of the filing of the Lease Rejection Motion, Plazas represented that it had a book value of approximately $465,000.00 for its personal property ("Personal Property") and $1,100,000.00 in book value for its inventory (the "Inventory") located at the Frystown Property, Clarks Ferry Property and the Breezewood Property (collectively, the "Operating Properties. Plazas believed that the actual resale values of such assets would be less.

11. As a result of the entry of the Lease Order, the Debtor was permitted to operate the Operating Properties and to sell the Personal Property and Inventory.

12. Pursuant to a certain Surrender Agreement to which the Debtor is a party and which concerns the Leases and the Personal Property and Inventory located at the Properties, the Debtor is permitted to utilize the Personal Property and Inventory. At the present time the Debtor is now operating the Operating Properties. As a result of the proceedings in the Southern District of New York, the Debtor is also required to provide to Plazas and the Secured Creditor a weekly statement as to its receipts from the sale of the inventory which was abandoned by Plazas.

13. As set forth above, the Debtor is a Pennsylvania corporation which owns entities which were previously in the Truck Plaza Business. It has resumed operations directly in the Truck Plaza Business.

15. Specifically, the Debtor is currently operating at the Operating Properties. The operation of the Breezewood Property is pursuant to a Lease.

16. In connection with the operation of the Debtor's Truck Plaza Business, the Debtor employs approximately 250 people.

17. The filing of the Plazas Chapter 11 case as well as the Clarks Ferry and Frystown Chapter 11 cases was caused by the downturn in the economy and rising fuel costs.

18. Because Plazas and the Debtor's subsidiaries were experiencing financial difficulties, various obligations, including secured obligations for which the Debtor was either an obligor or guarantor, have not been paid.

19. There is litigation against the Debtor pending as follows:

   a. A suit in the United States District Court for the Western District of Pennsylvania to Case No. 3:08-CV-00387 filed by Petro Franchise Systems, LLC.

   b. Mortgage Foreclosure filed by LNV Corporation in the United States District Court for the Western District of Pennsylvania to Case No. 09-1274.

   c. A suit in the Third Judicial District Court of Salt Lake County, State of Utah to Case No. 090921375 filed by Republic Bank, Inc.

   d. A suit in the United States District Court for the District of New Jersey to Case No. 08-3848 filed by Timothy Harrington.

   e. U.S. Bank National Association, as Trustee for the Registered Holders of FMAC Loan Receivables Trust 2000-A vs. All American Properties, Inc., Case No. 1:09-CV-0315 in which it has a final judgment.

f. U.S. Bank National Association, as Trustee for the Registered Holders of FMAC Loan Receivables Trust 2000-A vs. All American Properties, Inc., vs. Frystown All American Properties, Inc. and Clarks Ferry Properties, Inc. – a foreclosure action for which a default has been entered by the clerk.

20. As a result of the pending litigation set forth in Paragraph 20 above, the Debtor determined that it was necessary to file its own Chapter 11 proceeding.

## **LIENS**

21. The Clarks Ferry and Frystown Properties are subject to mortgages previously granted and recorded in the appropriate Office of the Recorder of Deeds, dated June 25, 1999, granted originally to Franchise Mortgage Acceptance Company ("FMAC"). A security interest was also granted to FMAC securing all personal property of the Debtor, including but not limited to inventory, accounts receivable, accounts and the proceeds thereof (the "Collateral"). U.S. Bank National Association as Trustee for the Registered of Holders of the FMAC Loan Receivables Trust 2000-A is the successor in interest to FMAC ("Secured Creditor"). Berkadia Commercial Mortgage LLC (the "Servicer") is authorized to act on behalf of the Secured Creditor. The Debtor acknowledges the lien of the Secured Creditor to the Clarks Ferry Property and the Frystown Property, as well as a lien on the Collateral and proceeds therefrom regardless of location.

22. Additional liens against Frystown Property may consist of the following:

a.. A Mortgage granted to CoreStates Bank, N.A. dated May 1, 1996 (the underline debt concerning this mortgage may be paid in full).

b. A Mortgage in the original amount of $7,197,272.20 to Glenn E. Mitstifer, Richard A. Mitstifer, administrator of All American Plazas, Inc., Employee Stock Ownership Plan, et al. Dated September 19, 2003. This Mortgage has been subordinated to the Mortgage of the Secured Creditor and may have been released.

c. A Mortgage in the original amount of $6,450,000.00 to Avatar Income Fund I, LLC dated April 14, 2005.

d. A Mortgage in the original amount of $2,050,000.00 granted to Avatar Funding Group, LLC dated April 14, 2005.

e. A Mortgage in the original amount of $3,500,000.00 granted to Columbia Bank and Trust Company dated January 9, 2005.

f. A Mortgage in the original amount of $6,500,000.00 granted to Columbia Bank and Trust Company dated February 1, 2006.

g. A Mortgage in the original amount of $15,000,000.00 granted to Columbia Bank and Trust Company dated February 21, 2007.

h. A Mortgage in the original amount of $15,000,000.00 granted to Columbia Bank and Trust Company dated February 21, 2007 (recorded separately from the immediately proceeding mortgage).

i. A Mortgage in the amount of $14,322,845.05 granted to TransMontaigne Products Services, Inc. dated November 30, 2007.

j. A judgment in favor of the Elevation Fund, LLC in West Hampden

Special Situations Funds, LLC entered on September 28, 2007. Certain of these Mortgages have additional and other collateral or may have been paid. None of these mortgagees or judgment lienholders are believed to have a lien on cash collateral.

23. Additional liens against Clarks Ferry Property may consist of the following:

   a. A Mortgage in the original amount of $6,450,000.00 granted to Avatar Income Fund I, LLC dated April 14, 2005.

   b. A Mortgage in the original amount of $14,322,845.05 in favor of TransMontaigne Products Services, Inc. Dated November 30, 2007.

Certain of these Mortgages have additional and other collateral or may have been paid. None of these mortgagees or judgment lienholders are believed to have a lien on cash collateral.

24. On the Petition Date, the operation of the Truck Plaza Business was being transitioned to the Debtor. It, therefore, had no operating accounts or payroll accounts from which it was operating. As of January 29, 2010, the Debtor established its own operating account, payroll account and money market account (the "Existing Accounts"), however it is still transitioning the depository accounts from the Operating Properties. On or before March 15, 2010, the Debtor will have properly established all necessary accounts, including the depository accounts for the Operating Properties, and will provide verification in writing to the Secured Party by such date, and will have ceased using the accounts of Plazas or any other affiliate. In

8

addition, no later than 5:00 pm on February 19, 2010, the Debtor shall provide to the Secured Party verification of the name of the financial institution and the account numbers for the Existing Accounts

25. This Motion is necessary because it is currently using the cash collateral of the Secured Creditor. Without the use of its inventory and personal property, including its Cash Collateral, the Debtor will not be able to continue operating, and it believes that it is in the best interest of the creditors to continue operating.

### The Need for Cash

26. The Debtor employs approximately 250 employees for the operation of the Truck Plaza Business, locations including Frystown, Clarks Ferry and Breezewood.

27. Each bi-weekly payroll of the Debtor, including payroll taxes, is approximately $140,000.00. After the Petition, on January 23, 2010 and on February 5, 2010, the Debtor through an affiliate, paid its payroll for the two week periods ending January 29, 2010 and January 15, 2010, respectively, from proceeds of the Debtor's personal property. The payroll paid on January 23, 2009 included amounts earned prior to the Petition Date.

28. Further, the Debtor has additional cash needs consisting of utilities, insurance, professionals and other operating expenses. The Debtor may also incur additional expenses as result of the Chapter 11 filing, including payments for professionals and for quarterly fees owed to the Office of the

9

U.S. Trustee. Attached hereto as **Exhibit "C"** is a budget (the "Budget") for the period from February, 2010 through January 2011.

29. The Debtor intends to continue to operate its Truck Plaza Business. As a result, it needs to continue to use cash collateral, for, among other things, the purchase of inventory, the payment of utilities and employees and the payment of real estate taxes and insurance. The Debtor intends to adhere to the Budget, and believes that it will not exceed any expense line item in the Budget by more than 10%, with an aggregate cap of 10% of the Budget for all line items.

30. The Debtor believes that its continued operation of its Truck Plaza Business will not harm its creditors and the Debtor will be able to maintain its Business and operate profitably.

31. The Debtor believes that it will be able to effectively reorganize.

32. Unless the Debtor is permitted to pay its various wages to its employees and pay its payrolls, great harm will occur to the Debtor and to its estate, as well as to the Debtor's employees.

33. Accordingly, unless the Court permits the continued payment of wages and the continued operations of the Debtor, there will be diminution in the value in the Debtor's estate which will result in a lower amount which may be payable to the various creditors in the case.

34. The Debtor proposes that as adequate protection for use of the Cash Collateral, that the Court's Order provide as follows:

    a. The Secured Creditor shall have a replacement lien on post-petition

10

assets of the Debtor, including cash and receivables.

b. The Debtor shall pay monthly payments of $20,000.00 from each of the Clarks Ferry Property and the Frystown Property to the Secured Creditor, totaling $40,000.00, beginning on March 15, 2010 and continuing on the 15th day on each month thereafter. Each such payment is to be made by wire transfer to the Secured Creditor from the Debtor's operating account.

c. In the event that any payment is not timely made as set forth in Paragraph 34(b) above or if the Debtor breaches the covenants contained herein, and following two (2) business days notice by electronic means to Debtor's counsel, Robert E. Chernicoff, without cure, or if the case is converted or a trustee is appointed, then the automatic stay shall be terminated in favor of the Secured Creditor so as to permit the Secured Creditor to exercise any and all rights which it may have under applicable law as to the Secured Creditor's Collateral, and the Debtor will consent to the appointment of a receiver as to the Clarks Ferry Property and the Frystown Property.

d. Any replacement lien granted above is requested to be perfected and effective without further recordation or action on the part of the Debtor or the Secured Creditor and that such lien shall survive conversion of the case, or the appointment of a Trustee in this case.

e. In the event the post-petition assets of the Debtor prove insufficient to provide a replacement lien in full, then the Secured Creditor shall

have an administrative claim having priority over all other administrative claims, except that it shall be, *pari passu* with fees owed to the Office of the United States Trustee, and the claims of professionals in the case; provided, however, that any claim which professionals in the case have as to an administrative claim is to be only as to assets which are not Collateral of the Secured Creditor.

    f.    Provide that any party (except the Debtor) shall have seventy-five (75) days from the date of the entry of the Interim Order approving this Motion to object to the lien of the Secured Creditor, and failure of any party to file a timely objection shall bar any contest to the validity or priority of the lien of the Secured Creditor.

    g.    Proceeds from Cash Collateral at the Clarks Ferry Property and the Frystown Property shall utilized solely for the benefit of the Clarks Ferry and Frystown Property and shall not be permitted to be utilized for the operation by the Debtor of the Breezewood Property or the use or benefit of any other real or personal property owned by the Debtor.  None of the Collateral or proceeds from the Collateral of the Secured Creditor may be transferred to or used by any other affiliate of the Debtor, specifically including the entities listed in Paragraph 3.a. through 3.e. herein, Abel Energy, any entity that Frank Nocito or Gregory Frost or their spouses, children or relatives have an interest or any officer, director, of the Debtor or an affiliate of the Debtor; provided, however, the Collateral and cash

generated therefrom may be utilized for the operations Clarks Ferry Property and Frystown Property, as reflected in the Budget; provided further however, that the Collateral and cash generated therefrom shall pay no more than two-thirds of the corporate overhead, which specifically includes no more that two-thirds of the salary paid to Frank Nocito in the amount of total amount of $1,500 per week for each of the Operating Properties and none of the Collateral or the cash generated therefrom may be used to pay Sharon Cheldnick or any other spouse, child or relative of Frank Nocito or Gregory Frost.

h.  Included in the Budget are line items for insurance and real estate taxes. Such monthly amounts shall, by no later than the 15th day of each month commencing on March 15, 2010 be transferred from the operating account in a segregated account of the Debtor on a monthly basis, and may not be used for any purpose other than the payment of real estate taxes and insurance.

i.  The Debtor shall adhere to its budget, and the Debtor shall not exceed any expenses line item by more than 10% with an aggregate cap of 10% over the budget for all line items. In the event that the Debtor believes that an expenditure greater than 10% over a line item will occur, the Debtor will request, in writing, permission to do so from the Secured Creditor, which written permission will not be unreasonably withheld.

13

Case 1:10-bk-00273-MDF    Doc 35    Filed 02/18/10    Entered 02/18/10 16:50:30    Desc
Main Document    Page 13 of 15

j. By each Wednesday, the Debtor is to provide to the Secured Creditor weekly summaries of revenues and expenditures for the prior week setting forth a comparison of such expenditures to the budgeted amounts.

k. By no later than the 20th of each month, commencing on March 20, 2010, Debtor is to provide to the Secured Creditor verification of amount transferred for the payment of real estate taxes and insurance and the account to which it has been transferred, or verification of the payment of the insurance or taxes.

WHEREFORE, All American Properties, Inc., the above named Debtor, respectfully requests that this Honorable Court enter an Order:

a. Permitting and authorizing the Debtor's payment of payroll for wages earned prior to the Petition Date, notwithstanding the inclusion of a pre-petition period of time in such payroll and authorizing the payment of payroll in the future;

b. Allowing the Debtor to utilize its cash, receivables, inventory, and cash from the receivables until March 31, 2010, notwithstanding the lien and security interest of any party, including that of the Secured Creditor, which date may be extended by written agreement of the parties;

c. Conditioning the Debtor's use of Cash Collateral to the conditions set forth herein and including the all of the salient provisions into such Order;

d. Permitting adequate protection payments of a total of $40,000.00 per month to be paid to the Secured Creditor from the Debtor's facilities at Clarks Ferry and Frystown; and

14

      e.      Granting the Debtor such other and further relief as is just and proper.

                Respectfully submitted,

                CUNNINGHAM & CHERNICOFF, P.C.

            By: /s/ Robert E. Chernicoff
                Robert E. Chernicoff, Esquire
                2320 North Second Street
                Harrisburg, PA 17110
                (717) 238-6570
                Attorneys for All American Properties, Inc.,
Date: February 18, 2010      Debtor and Debtor-in-Possession

C:\NRPORTBL\ACTIVE\KRESSK\12138147_2.DOC

15

Case 1:10-bk-00273-MDF    Doc 35    Filed 02/18/10    Entered 02/18/10 16:50:30    Desc
Main Document    Page 15 of 15