IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| ALL AMERICAN PROPERTIES, INC. | : | |
|     Debtor | : | CASE NO. 1:10-bk-00273MDF |
| | : | |
| PETRO FRANCHISE SYSTEMS, LLC | : | Re: Motion for Relief From Stay |
|     Movant | : | Docket No. 13 |
| | : | |
|     vs. | : | |
| | : | |
| ALL AMERICAN PROPERTIES, INC. | : | |
|     Respondent | : | |

## OPINION

Petro Franchise Systems, LLC ("Petro") seeks an annulment of the automatic stay to validate an order entered by the United States District Court for the Western District of Texas (the "District Court") which, in part, awards money damages to Petro and grants Petro an injunction against All American Properties, Inc. ("All American" or the "Debtor"), and which was entered shortly after Debtor filed its chapter 11 petition. For the reasons set forth below, Petro's request for relief will be denied.

### Background

On or about February 1998, Petro and All American entered into a franchise agreement granting the Debtor a franchise to operate a Petro-branded travel center at 167 Post House Road, Breezewood, PA 15533 (the "Breezewood Travel Center"). The parties entered into a new franchise agreement and related addendum on or about October 23, 2003, which authorized Debtor to operate the Breezewood Travel Center as a Petro-branded travel center for ten years plus renewal periods (the "Franchise Agreement"). The Franchise Agreement contains a covenant not to compete (Section 1.7) (the "Covenant Not to Compete") setting certain time,

scope and geographic limits on Debtor's activities following termination of the Franchise Agreement, including a bar on owning or operating the Breezewood Travel Center for three years post-termination. The Covenant Not to Compete also provides that "[t]he parties recognize and agree that if Franchisee [All American] breaches this section . . . money damages are not an adequate remedy to Petro for the breach, [and] . . . Petro shall be entitled to seek an injunction restraining Franchisee [All American] from any breach, without showing or proving actual damage sustained by Petro."

The parties agree that Debtor did not make all the payments required under the Franchise Agreement and that Petro sent a series of default notices. Petro alleges that it properly terminated the Franchise Agreement on August 29, 2008. On September 2, 2008, Petro wrote to Debtor to confirm that the Franchise Agreement had been terminated and asked Debtor to confirm that it had taken steps to implement its post-termination obligations, including removing signage that designated the Breezewood Travel Center as a Petro facility. Debtor admittedly did not respond to the letter.

On October 7, 2008, Petro filed a complaint in the District Court (the "Texas Suit") alleging, in part, that Debtor continued to operate the Breezewood Travel Center as a Petro-branded travel center without permission, i.e., it refused to take down Petro signage and continued to hold itself out to the public as a Petro franchisee, and seeking, among other things, an injunction requiring Debtor to cease and desist from utilizing the Petro trademarks and brands. Petro moved for an injunction in October 2008, which ultimately was granted by the District Court on March 23, 2009. In April 2009, the Breezewood Travel Center was designated as a Pilot Travel Centers, LLC center, with Debtor continuing to operate the business. On October

2

13, 2009, Petro filed an amended complaint in the Texas Suit seeking, among other claims for relief, an injunction barring Debtor from violating the Covenant Not to Compete by operating the Breezewood Travel Center as a Pilot-branded travel center.

Petro filed a motion to compel discovery and, following a hearing on December 4, 2009, the District Court granted Petro's motion and issued a discovery order, which provided that sanctions could be imposed for non-compliance. On January 7, 2010, the District Court held a show cause hearing as to why sanctions should be not be issued against Debtor for failing to comply with the discovery order. When Debtor failed to justify its actions to the District Court, an order was entered on January 8 imposing sanctions on Debtor and requiring Debtor to comply with the court's order by January 14, 2010. On January 14, 2010 at 2:00 p.m. MST (4:00 p.m. EST), the District Court held another show cause hearing regarding Debtor's continuing non-compliance with its orders. Subsequent to this hearing, the District Court entered an order (the "Injunction Order") that, among other terms, awarded money damages to Petro, enjoined Debtor from violating the Covenant Not to Compete, and specifically enjoined the Debtor from "owning or operating . . . the Breezewood travel center, and from owning or operating . . . any fuel service operations at the former Breezewood Petro location. . . " for a period of three years. Debtor filed a chapter 11 petition in this Court on January 14, 2010 at 4:41 p.m., subsequent to the show cause hearing (a mere forty-one minutes after that hearing commenced), but prior to the docketing of the Injunction Order in the Texas Action.

Petro filed a motion in this Court seeking the annulment of the automatic stay so as to validate the Injunction Order. Debtor argues that the Injunction Order was entered in violation of

3

Case 1:10-bk-00273-MDF    Doc 73    Filed 03/10/10    Entered 03/10/10 10:16:07    Desc
Main Document      Page 3 of 7

the automatic stay and that annulment is not warranted. A properly noticed hearing was held on March 2, 2010. The matter is ripe for decision.[1]

## Discussion

There is no dispute that the Injunction Order was docketed after Debtor filed its chapter 11 petition and, accordingly, was entered in violation of the automatic stay. Actions taken in violation of the automatic stay are void *ab initio*. *Constitution Bank v. Tubbs,* 68 F.3d 685, 692, fn. 6 (3d Cir. 1995)(" [J]udicial actions and proceedings against the debtor are void *ab initio* absent relief from the stay.")

Relief from the automatic stay may be granted upon a showing of cause, including the lifting of the stay to permit pending litigation to be concluded in another forum if no great prejudice to the bankruptcy estate will occur. H.R. Rep. No. 95-595, at 341 (1977); S. Rep. No. 95-989, at 50 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5836. However, a bankruptcy court must consider the request for relief to pursue litigation in another forum within the totality of the circumstances of the bankruptcy case. *In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997) (citations omitted); *In re Plumberex Speciality Products, Inc*., 311 B.R. 551, 557 (Bankr. C.D. Cal. 2004). The decision as to whether the stay should be lifted is within the discretion of the bankruptcy court. *In re Dixie Broadcasting, Inc.* 871 F2d 1023, 1026 (11th Cir. 1989); *In re Mid-Atlantic Handling Systems, LLC*, 304 B.R. 111, 130 (Bankr. D. N.J. 2003). When deciding whether an unsecured creditor should be granted relief from the stay, the court should consider the "fresh

---

[1] I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A),(B) and (O). This Opinion constitutes findings of fact and conclusions of law made under Fed. R. Bankr. P. 7052.

start" policy of the Bankruptcy Code as well as the interests of the debtor, creditors and other parties in interest. *In re Borbridge*, 81 B.R. 332, 335 (Bankr. E.D. Pa. 1988).

In order to obtain relief from the stay, the movant must make an initial showing of cause under § 362(d)(1). The burden of proof then shifts to the debtor on all issues other than "the debtor's equity in property." 11 U.S.C. § 362(g)(1); *In re Sonnax Industries, Inc.* 907 F.2d 1280, 1285 (2d Cir. 1990). If the movant fails to make an initial showing of cause, the court should deny relief without the burden shifting to the debtor. *Id*.

As noted by Judge Nealon in *In re Hohol*, 141 B.R. 293, 297 (M.D. Pa. 1992), unsecured creditors often are granted relief from the stay when two factors are present: (1) the debtor has engaged in "morally culpable conduct" that the moving party is seeking to undo in another forum and (2) the movant is not pursuing assets of the estate. *Id.* (quoting *In re Stranahan Gear Co. Inc.*, 67 B.R. 834, 837-38(Bankr. E.D. Pa. 1986)). Like *Hohol,* the facts of this case must be analyzed in light of these two factors to determine whether relief from the stay is justified.

Debtor filed a bankruptcy petition mere minutes after the conclusion of a hearing in which it received an adverse ruling from the District Court. Although the Injunction Order was issued in violation of the automatic stay, the history of the case recited in this order demonstrates Debtor's flagrant disregard of the court's prior orders. Debtor failed to comply with the December 4, 2009 order that granted the Petro's motion to compel. When Debtor failed to comply, it and other defendants were directed to appear before the District Court on January 7, 2010 at a show cause hearing. At this hearing Debtor apparently was unable to explain its persistent non-compliance with prior orders, whereupon the District Court issued yet another Show Cause Order and imposed sanctions on January 8. Yet another hearing was held on January

14, 2010 at which time the District Court issued the Injunction Order memorializing sanctions imposed against Debtor, including entering judgment against Debtor for breach of contract, breach of covenant not to compete and breach of guaranty, as well as sustaining claims against Debtor for violation of various state and federal laws. Debtor's actions in the Texas Suit were abusive toward the District Court and toward the opposing parties. Further, the filing of a bankruptcy petition to avoid compliance with the orders of the District Court is "morally culpable" (sanctionable) conduct that constitutes cause for lifting the automatic stay. Were this the only consideration in my decision I would have no hesitancy in lifting the automatic stay, however, this is not the only factor I must consider. I also must consider whether in its request for relief Petro is pursing assets of the estate.

Petro has sought annulment of the automatic stay, which would validate enforcement of the Injunction Order. This request for relief is broad, and I find that validation of the Injunction Order would conflict with competing policies of the Bankruptcy Code. The Injunction Order not only provides for the enforcement of the Covenant not to Compete, it also grants judgment on all claims as set forth in Petro's First Amended Complaint. Specifically, it provides for damages to be allowed in the amount of $223,469.18 for claims related to the Milton location as well as damages in the amount of $272,068.26 for claims related to the Breezewood Travel Center. If I were to grant the relief requested by Petro, other creditors may be prejudiced because claims against the estate would be liquidated and enforceable in Debtor's estate.

## Conclusion

Although I find Debtor's conduct in the Texas litigation to be reprehensible, and the timing of its bankruptcy petition to be suspect, I conclude that Petro's request for relief from the

6

stay will adversely impact not only Debtor, but creditors of the estate as well. Therefore, the current motion for relief seeking annulment of the stay to validate the entry of the Injunction Order and termination of the stay to permit enforcement of the Injunction Order will be denied.

**By the Court,**

_____
Mary D. France
Chief Bankruptcy Judge

Date: March 10, 2010

*This document is electronically signed and filed on the same date.*